UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN W. STONE DISTRIBUTOR, LLC, * <br> CERTAIN UNDERWRITERS AT LLOYD'S * <br> LONDON, ACE AMERICAN INSURANCE * <br> COMPANY and NATIONAL FIRE & * <br> MARINE INSURANCE COMPANY * <br>   * <br> Plaintiffs * <br>   * <br> VERSUS * <br>   * <br> PENN MARITIME, INC., BISSO TOWBOAT * <br> CO., INC., TOWING VESSEL LUCIA, BARGE* <br> CARIBBEAN, and TOWING VESSEL * <br> WILLIAM S, its tackle, furniture, and * <br> appurtenances, * <br>   * <br> In Rem Defendants * | CIVIL ACTION NO. 17-4942 <br> c/w 17-5700 <br><br> JUDGE ASHE <br><br> MAGISTRATE JUDGE NORTH |

**BISSO TOWBOAT CO.'S RESPONSE TO
PENN MARITIME'S STATEMENT OF
<u>UNCONTESTED MATERIAL FACTS</u>**

COMES NOW, by and through undersigned counsel, Defendant/ Cross Claimant Bisso Towboat Co., Inc. ("Bisso") who responds to the Statement of Uncontested Material Facts submitted by Penn Maritime, Inc. ("Penn") in support of its Motion for Partial Summary Judgment as follows:

1. The Statement is denied as written. Scott Slatten also sent an email dated February 26, 2015 in which he advised Bisso's customers that the company's new "tariff" would become effective April 1, 2015.[1]

---

[1] Exhibit A and Exhibit 1 attached thereto.

1

2. The Statement is denied as written. While the first page of the "Tariff/ Towage Contract" does have blank lines for signatures and for dates, per the express language of the contract's "Rates, Terms, and Conditions," the contract "comes into force" at the point a customer orders, or accepts, any services from Bisso.[2]

3. The Statement is denied as written. While the contract does include signature blocks, the contract does not have to be signed to be effective and binding. Bisso does not require its customers to sign the contract but only that they assent to the terms and, per the express terms of the contract, assent is indicated by the ordering of, or accepting of Bisso's services.[3]

4. The Statement is denied as written. It is admitted that Penn did not sign the contract.

5. The Statement is denied. Charles "Chuck" Ferrer verbally agreed to the terms in a meeting with Bisso's president Scott Slatten during a meeting held on May 5, 2015.[4]

6. The Statement is denied as written. The contract states, "The furnishing of any tug services by Bisso shall not be construed to be or give rise to a personal contract, and it is understood that Bisso and any tugs furnished, their owners, charters (*sic*),

---

[2] Exhibit A and Exhibit 3 attached thereto.

[3] Exhibit A and Exhibit 3 attached thereto; Untranscribed testimony of Scott Slatten.

[4] Exhibit A.

operators and agents, shall have the benefit of all exemptions from and limitations of liability to which a vessel owner is entitled under any U.S. Limitation of Liability Statutes and applicable state or federal laws."[5]

7. The Statement is denied as written. The phrase is taken out of context.

8. The Statement is denied as written. The rate stated in the contract is the rate charged in the absence of a separately negotiated rate.[6] The stated rate is not "required."

9. The Statement is admitted. However, per the request of Chuck Ferrer, the rate did not become effective until June 1, 2015.[7]

10. The Statement is admitted.

11. The Statement is admitted.

12. The Statement is admitted to the extent that the invoices attached to Penn's motion for partial summary judgment show that a rate of $600 per hour was charged by Bisso after June 1, 2015.

13. The Statement is denied. The rate stated in the contract is the starting point for negotiations and is the rate applied in the absence of another negotiated contract.[8]

---

[5] Exhibit A and Exhibit 3 attached thereto.

[6] Exhibit A.

[7] Exhibit A.

[8] Exhibit A.

14. The Statement is admitted.

15. The Statement is admitted.

16. The Statement is denied.

17. The Statement is denied as written. Scott Slatten sent an email to Chuck Ferrer who later included William "Billy" Block on the email chain.[9] While it is true that none of the emails in the chain reference the contract, at this point in time, Bisso had made its cross claim for defense and indemnity in the litigation and Kirby/Penn was well aware that Bisso considered the terms and conditions part of a binding contract.

18. The Statement is denied as written. The Statement mischaracterizes the contents of the contract.[10]

And now Bisso submits in support of its Opposition that:

19. The "Tariff/ Towage Contract" was sent by email dated March 19, 2015 to Bisso customers, including Chuck Ferrer and William "Billy" Block of Kirby.[11]

20. Neither Chuck Ferrer nor Billy Block voiced any objection to the contract.[12]

21. Scott Slatten, President of Bisso, personally met with Chuck Ferrer on May 5,

---

[9] See R.Doc. 63-9, page 10 of 21.

[10] Exhibit A and Exhibit 3 attached thereto.

[11] Exhibit A.

[12] Untranscribed Testimony of Scott Slatten.

4

2015 and handed him a hard copy of the "Tariff/ Towage Contract."[13]

22. At that meeting, Ferrer verbally agreed to the contract.[14]

23. After Ferrer agreed to the contract, Kirby/ Penn continued to request and accept services from Bisso.[15]

        Respectfully submitted,

        /s/ Cindy Galpin Martin

        _____
        RUFUS C. HARRIS, III (#6638)
        ALFRED J. RUFTY, III (#19990)
        CINDY GALPIN MARTIN (#25159)
        HARRIS & RUFTY, L.L.C.
        650 Poydras Street, Suite 2710
        New Orleans, Louisiana 70130
        Telephone:  (504) 525-7500
        Facsimile:   (504) 525-7222
        Attorneys for Bisso Towboat Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and forgoing pleading was served on counsel of record by electronic means including the CM/ ECF system this 31st day of October, 2018.

        /s/ Cindy G. Martin

        _____

---

[13] Exhibit A.

[14] Exhibit A.

[15] Exhibit A.