## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN W. STONE DISTRIBUTOR, LLC,** *et al* | * | **CIVIL ACTION NO. 17-4942** |
| **Plaintiffs** | * | **C/W 17-5700** |
| | * | |
| **VERSUS** | * | **JUDGE ASHE** |
| | * | |
| **PENN MARITIME, INC.,** *et al* | * | **MAGISTRATE NORTH** |
| **In Rem Defendants** | * | |

_____/

### SUR REPLY

MAY IT PLEASE THE COURT:

Defendant/ Cross Defendant Penn Maritime, Inc. ("Penn" or "Kirby/ Penn")[1] has failed to carry its burden that there are no genuine issues of fact as to the existence of valid, enforceable defense, indemnity and insurance obligations in favor of Bisso Towboat Co., Inc. ("Bisso"). Therefore, respectfully Penn's motion for partial summary judgment should be denied.

It is undisputed that a copy of the applicable contract, the "Tariff/ Towage Contract," was emailed to Kirby/ Penn on March 19, 2015, and that Charles "Chuck" Ferrer was handed a hard copy of the contract during a meeting with Bisso's Scott Slatten.  It is further undisputed that, thereafter, with knowledge of the contents of the contract, Kirby/ Penn continued to, and continues to this day to, use the services of Bisso.

Penn seeks to overcome Bisso's Opposition by pointing out what it perceives as

_____

[1] Penn is a wholly owned subsidiary of Kirby. See R.Doc. 63-9 (Declaration of William Block); See Also Exhibit B (30(b)(6) Deposition of Scott Slatten, page 63, lines 3-21).

inconsistencies between the Declaration of Scott Slatten and his deposition testimony. Even if there are some inconsistencies, which is denied, this is not enough to merit a grant of summary judgment in Penn's favor.

First, the so-called "Sham Affidavit Doctrine," even if applicable, which is denied, does not mandate that Scott Slatten's Declaration be stricken.  At the outset it should be noted that the "doctrine" only applies to affidavits in support of a motion for summary judgment which contradict prior deposition testimony.  The implicit rationale for the "doctrine" is to avoid a nonmoving party in a summary judgment proceeding from invalidating prior damaging deposition testimony by correcting it with a later, inconsistent affidavit.[2]  However, in this case, the deposition was taken after the Declaration and the comments made in the deposition are in more detail and are clarifying, as opposed to contradicting.  The Declaration was submitted in support of Bisso's opposition to Penn's motion on October 31, 2018[3]  (R.Doc. 71-1 and 72-2) but Slatten's deposition was not taken until November 1, 2018.  Thus, the "Sham Affidavit Doctrine" does not apply.[4]

Further, not every discrepancy between an affidavit/ declaration and prior

---

[2] Canady v. Prator, 2015 WL 507883 p. 3 (W.D. La. 02/06/2015)(James, J.) discussing S.W.S Erectors, Inc. v. Infax, Inc., 72 F.3d 489 (5th Cir. 1996).

[3] The Opposition was initially filed on October 31, 2018 as R.Doc. 71 but had to be resubmitted as R.Doc. 72 on November 1, 2018 because the Response to the Statement of Uncontested Material Facts had inadvertently been omitted.

[4] Id. [Refusing to strike an affidavit because, inter alia, the affidavit was submitted prior to the deposition].

2

deposition testimony indicates a "sham."[5]  Penn cites to <u>Wagoner v. Exxon Mobil Corp</u> in support of its position, however, that case does not aid Penn's argument.[6]  In that case, the movant for summary judgment moved to strike an affidavit submitted in opposition on that basis that the affidavit contradicted prior deposition testimony.[7]  The district court noted that there were inconsistencies, but, however, refused to strike the affidavit.  The court noted that "not every discrepancy between an affidavit and prior deposition testimony indicates a sham" and "to the extent they exist, discrepancies ... present credibility issues properly put to the trier of fact."[8]

In his Declaration, Slatten averred:

> [...] I personally met with Chuck Ferrer on May 5, 2015 and physically handed him a copy of the new Tariff/ Towage Contract ... Ferrer acknowledged that he had already received the new contract via email.  At that same meeting, Ferrer, on behalf of Kirby, agreed to the new Tariff/ Contract [*sic*] and to an increase rate of $600/ hour for Bisso tugs. ...[9]

Notably, Slatten did not aver that Ferrer read the contract or that he expressly agreed to all the terms.  During his deposition, in response to a question about whether Ferrer expressed that he agreed to <u>all</u> the terms of the contract, Slatten responded,

---

[5] <u>Wagoner v. Exxon Mobil Corp.</u>, 813 F.Supp.2d 771 (E.D. La. 2011).

[6] 813 F.Supp.2d 771 (E.D. La. 2011).

[7] <u>Wagoner</u>, 813 F.Supp.2d at 805-806.

[8] <u>Id</u> at 806.

[9] R.Doc. 71-1 and 72-2, paragraphs 18, 19, and 20; Also attached hereto as Exhibit A for the Court's convenience.

3

"Never expressed that he was agreeing to them, but he never said that he wasn't agreeing to them, because he was given a copy of them."[10]  Slatten also noted that Ferrer did not expressly object to any of the terms of the contract, either, and had continued to use Bisso's services, which, to his understanding, constituted acceptance of the contract.[11]  Thus, rather than contradicting his Declaration that Ferrer "accepted" the contract, Slatten's deposition testimony explains why he believed that Ferrer had accepted the contract.[12]

Moreover, whether Ferrer expressly stated that he accepted all of the terms of the contract does not show an absence of a genuine dispute as to any material fact such that Penn would be entitled to summary judgment.  A fact is "material" in the context of a motion for summary judgment if it might affect the outcome of the suit under the governing law.[13]  Here the governing law, the law of maritime contracts, does not require that an indemnitor expressly acknowledge or sign a contract for the indemnity provisions to be valid and enforceable.

The precedent in the U.S Fifth Circuit is clear that a maritime contractual indemnity obligation does not have to be signed or expressly accepted by the indemnitor

---

[10] Exhibit B (30(b)(6) Deposition of Scott Slatten, page 71, lines 13-18).

[11] Exhibit B (30(b)(6) Deposition of Scott Slatten, page 71, lines 19-25).

[12] Exhibit B (30(b)(6) Deposition of Scott Slatten, page 62, lines 3-12

[13] Buchanan v. Gulfport Police Dept., 530 Fed.Appx. 307, 310 (5th Cir. 2013)[internal citations omitted].

to be valid and enforceable.  To wit, in <u>One Beacon Ins. Co. v. Crowley Marine Services,</u>

<u>Inc.</u>, the purported indemnitor never actually received a copy of the indemnity/ insurance

clauses, which were contained on a web site, and the terms of the indemnity/ insurance

clauses were not discussed prior to the incident subject of the litigation.[14]  Nonetheless,

the Fifth Circuit held that the indemnity and insurance obligations were binding on the

purported indemnitor because the indemnitor was placed on notice of the existence of the

clauses through reference to the indemnitee's website on a document submitted to the

indemnitor prior to the casualty.

Similarly, in <u>Cargill v. Kopalnia Rydultowny Motor</u>, cited by Bisso in footnote 65

of its Opposition, a vessel captain signed a Berth Application which referenced a separate

"Tariff."[15]  The "Tariff," which was not separately provided to the vessel, contained

defense, indemnity, and insurance obligations.[16]  Despite the fact that the vessel did not

sign the "Tariff" or otherwise indicate assent to its terms, the Fifth Circuit held that the

vessel was bound by its terms, including the defense, indemnity, and insurance

obligations.

Here, Bisso's position is stronger than that of the indemnitees in <u>Crowley Marine</u>

and <u>Cargill</u> because it is undisputed that Penn actually received copies of the "Tariff/

---

[14] 648 F.3d 258 (5th Cir. 2011).

[15] 304 Fed.Appx. 278 (5th Cir. 2008).

[16] <u>Id</u>. at 282.

Towage Contract" with its express defense, indemnity, and insurance obligations. Further, the contract, which Penn undisputably had, contained explicit references to Bisso's easily navigated web site which also contained the defense, indemnity, and insurance obligations. Penn admits that it received the email with the "Tariff/ Towage Contract" attached.  It does not dispute that Ferrer received a hard copy of the contract at the May 5, 2015 meeting with Bisso's Slatten.  With knowledge of the existence of the contract with its defense, indemnity, and insurance obligations, Penn consciously requested the services of Bisso up to, including, and after the incident subject of this litigation.

Under the governing law, i.e. the Fifth Circuit precedents of <u>Crowley Marine</u> and <u>Cargill</u>, this is sufficient to enforce the terms of the contract, including the indemnity obligations, against Penn.  It is not necessary under the law of maritime contracts that the indemnitor expressly accept or sign the contract. This is supported by the cases cited by Bisso in its Opposition.  The facts of the trio of cases involving Moran Towing & Transportation, including the Second Circuit case, are all similar to those present here.[17] In those cases, as was done here, the contract containing the defense and/ or indemnity obligations were mailed to, or otherwise provided to, the purported indemnitor. Thereafter, as was done here, the indemnitor orally requested the tug company provide an

---

[17] <u>The Margaret A. Moran</u>, 57 F.2d 143 (2d Cir. 1937); <u>Complaint of Moran Philadelphia</u>, 175 F.Supp.3d 508 (E.D. Pa. 2016); <u>Trinidad Corp. v. S.S. Sister Katingo</u>, 280 F.Supp. 976 (S.D. NY 1967).

assist tug.  Those courts held that the indemnitor was bound by the indemnity clauses because, in effect, the indemnitor had knowledge of the terms by virtue of the fact that it had received copies of the contract prior to the incident subject of the indemnity demand. Thus, the fact, if true, that Kirby/ Penn's Ferrer may not have expressly stated that he was accepting all the terms of the contract is not "material" but, rather, is "irrelevant and unnecessary" to the summary judgment analysis.[18]

The "Tariff/ Towage Contract" is valid under maritime law and is not otherwise rendered unenforceable by the "Bisso" doctrine.  That doctrine, as expressed by the Supreme Court in <u>Bisso v. Inland Waterways Corp.</u>, specifically addressed the unique concerns inherent in a situation in which a tug or tow boat is in complete and exclusive control of a "dumb" unmanned barge without its own crew or its own motive power.[19] No court has ever applied the "Bisso" rule outside this context.[20]  Notably, Penn cites none. Because Bisso's tractor tug, WILLIAM S, was not towing an unmanned "dumb" barge, the "Bisso" rule is inapplicable.

Further, contrary to Penn's assertions, the "Tariff/ Towage Contract" does not run

---

[18] <u>Buchanan</u>, 530 Fed.Appx. at 310.

[19] 349 U.S. 85 (1955).

[20] <u>Sander v. Alexander Richardson Investments</u>, 334 F.3d 712 (8th Cir. 2003)[The rule in Bisso is limited to towage agreements and similar contracts such as bailments.]; <u>Stevens Institute of Technology v. U.S.</u>, 396 F.Supp. 986, 990 (S.D. NY 1975)["[T]owage contracts [as contemplated by the <u>Bisso</u> rule] involve services in which a tug is in sole control because the tow is without power or crew."].

afoul of the "Bisso" rule, even if applicable, which is denied, because the indemnity clause does not completely exculpate Bisso from <u>all</u> liability. Under the terms of the indemnity agreement in the "Tariff/ Towage Contract," Penn is not required to indemnify Bisso for Bisso's sole fault when that sole fault is the cause of the accident.  The indemnity clause does not limit Bisso's liability for its comparative fault. Clauses which limit the indemnitee's liability in certain ways, as opposed to completely exculpating the indemnitee from <u>all</u> liability, are not unenforceable under <u>Bisso.</u>[21]

### Conclusion

The "Sham Affidavit Doctrine" is inapplicable and the Declaration of Scott Slatten submitted in support of Bisso's Opposition should not be stricken. Further, under binding precedent, it is not required that Kirby/ Penn signed or expressly state that they accepted the terms of the "Tariff/ Towage Contract" for the included defense, indemnity, and insurance obligations to be valid and enforceable.  It is sufficient that Kirby/ Penn was provided a copy of the contract and was made aware that terms and conditions were also posted on Bisso's website.  Moreover, the "Tariff/ Towing Contract" in not invalidated by the "Bisso" rule because the contract is not the type of contract covered by the rule.

WHEREFORE, Defendant Bisso Towboat Co., Inc. respectfully requests that this Honorable Court deny the motion for partial summary judgment.

---

[21] <u>See</u> <u>e.g.</u> <u>Foss Maritime v. Cashman Equipment</u>, 2008 WL 4534378 (E.D. La. 10/06/2008)(Africk, J)[Provision limiting liability in a towage contract for consequential losses did not run afoul of <u>Bisso</u>.].

Respectfully submitted,

/s/ Cindy Galpin Martin

_____

RUFUS C. HARRIS, III (#6638)
ALFRED J. RUFTY, III (#19990)
CINDY GALPIN MARTIN (#25159)
HARRIS & RUFTY, L.L.C.
650 Poydras Street, Suite 2710
New Orleans, Louisiana 70130
Telephone:  (504) 525-7500
Facsimile:   (504) 525-7222
Attorneys for Bisso Towboat Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and forgoing pleading was served on counsel of record by electronic means including the CM/ ECF system this 8th day of November, 2018.

/s/ Cindy G. Martin

_____