1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN W. STONE OIL DISTRIBUTOR, L.L.C., CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, ACE AMERICAN INSURANCE COMPANY, AND NATIONAL FIRE & MARINE INSURANCE COMPANY | CIVIL ACTION<br><br>NO. 2:17-cv-04942-SSV-MBN<br><br>c/w 2:17-cv-5700 |
| PLAINTIFFS | JUDGE VANCE |
| VERSUS | MAGISTRATE NORTH |
| PENN MARITIME, INC., IN PERSONAM, BISSO TOWBOAT CO., INC., IN PERSONAM, TOWING VESSEL LUCIA, ITS TACKLE, FURNITURE, AND APPURTENANCES, IN REM, BARGE CARIBBEAN, ITS TACKLE, FURNITURE, AND APPURTENANCES, IN REM, AND TOWING VESSEL WILLIAM 5, ITS TACKLE, FURNITURE, AND APPURTENANCES, IN REM | |
| DEFENDANTS | |

Federal Rules of Civil Procedure Rule 30(b)(6) deposition of BISSO TOWBOAT COMPANY, INC., given through its designated representative, SCOTT T. SLATTEN, 39 Audubon Boulevard, New Orleans, Louisiana  70118, taken in the offices of Harris & Rufty, Suite 2710, 650 Poydras Street, New Orleans, Louisiana  70130, on Thursday, the 1st day of November, 2018, beginning at 10:08 a.m.

(504)831-1753
433 METAIRIE ROAD, #220

HUFFMAN & ROBINSON, INC.
CERTIFIED COURT REPORTERS

EXHIBIT
B

62

1   A-3, no one, neither Mr. Ferrer, nor anyone else
2   at Kirby ever signed that agreement, did they?
3       A.   They never signed the contract, but they
4   agreed to the terms and the rates.
5       Q.   Do you have anything in writing that
6   Kirby agreed to the terms and conditions?  Not the
7   rates.  The terms and conditions.
8       A.   Well, if you read our tariff, it states
9   by ordering our services, you're agreeing to the
10  terms and conditions.
11      Q.   I've read your tariff.
12      A.   So, we don't require it to be signed.
13      Q.   I've read your tariff, but not to quibble
14  with you, but you need to listen to my question
15  and answer my question.
16          MR. HARRIS:
17              He testified that they
18          didn't require them to sign it.
19      A.   They didn't sign it.
20  EXAMINATION BY MR. LeBLANC:
21      Q.   The question wasn't if they requested.
22  You've already told me they didn't sign it.  My
23  question then was a little different.  Did you get
24  anything in writing from Kirby that they agreed to
25  the terms and conditions of the April 1, 2015,

```
 1  tariff or contract?
 2       A.    Nothing in writing, no.
 3             MR. HARRIS:
 4                  Let me make a statement on
 5             the record to protect my office.
 6             In the unsworn declaration of
 7             William Block, he says Penn
 8             Maritime is a wholly owned
 9             subsidiary of Kirby Corp.
10             MR. LeBLANC:
11                  And that's correct.  Kirby
12             Corp. is not Kirby Offshore
13             Marine.  We agree.
14             MR. HARRIS:
15                  Quibbling.  Okay.
16             MR. LeBLANC:
17                  Not quibble.  They are
18             different corporations.  I think
19             they may have an issue with it.
20             MR. HARRIS:
21                  Okay.
22  EXAMINATION BY MR. LeBLANC:
23       Q.    Likewise, when you -- we don't have a
24  copy of the tariff, the Bisso tariff contract,
25  prior to April 15th, but that had stated rates in
```

1    A.   No.  I gave him a copy of it, but we
2  don't require it be signed.
3    Q.   I didn't ask if you required it.  Did you
4  ask him to sign it?
5    A.   No, I did not.
6    Q.   Did he ever indicate to you that he was
7  going to sign it?
8    A.   No.
9    Q.   Did he indicate to you that he had to get
10 approval to the terms and conditions from the
11 Legal Department of Kirby?
12   A.   No, he never expressed that to me.
13   Q.   Did he ever express to you that he was
14 agreeing to all of the terms and conditions in the
15 contract?
16   A.   Never expressed that he was agreeing to
17 them, but he never said that he wasn't agreeing to
18 them, because he was given a copy of them.
19   Q.   He never objected to them, or did he?
20   A.   No.  He never objected to anything.
21   Q.   So, he never objected, but he never said,
22 yes, I will be bound by them as well?
23   A.   Well, I'll go back to what I said
24 earlier.  By agreeing to use us, you're bound by
25 them.

# REPORTER'S CERTIFICATE

This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

I, CAROL VALLETTE SLATER, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that SCOTT T. SLATTEN, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 85 pages; that this testimony was reported by me in the stenotype reporting method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board, and that I am informed about the complete arrangement, financial or otherwise, with the person or entity making arrangements for deposition services; that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board; that I have no actual knowledge of any prohibited employment or contractual relationship, direct or indirect, between a court reporting firm and any party litigant in this matter, nor is there any such relationship between myself and a party litigant in this matter. I am not related to counsel or the parties herein, nor am I otherwise interested in the outcome of this matter.

_____
CAROL VALLETTE SLATER                DATE
Certified Court Reporter (78020)
Huffman & Robinson, Inc.
Suite 220, Metairie Office Tower
433 Metairie Road
Metairie, Louisiana  70005
(504) 831-1753/(800) 749-1753
(504) 831-1759/fax